UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEOBALDO FIGUEROA VELASQUEZ; aka VELAZQUEZ, | § § § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-11-2132 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

This case is before the Court on Petitioner Teobaldo Figueroa Velasquez's Petition for Writ of Habeas Corpus, and Respondent Rick Thaler's Motion for Summary Judgment.  Having carefully considered the Petition, the Summary Judgment Motion, and the arguments and authorities submitted by the parties, the Court is of the opinion that Respondent's Motion for Summary Judgment should be GRANTED, and Velasquez's Petition for Writ of Habeas Corpus should be DENIED.

I.      Background

Velasquez was convicted in the 339th Judicial District Court of Harris County, Texas of murdering Jose Lorenzo, and was sentenced to life imprisonment.  SH. at 144.[1]  The 14th Court of Appeals, Harris County, Texas, affirmed the conviction and sentence, *Velasquez v. State*, No. 14-07-00781-CR (Tex. App. – Houston [14[th]] July 30, 2009).  The Texas Court of Criminal Appeals ("TCCA") refused his petition for discretionary review on February 3, 2010.  *In re Velasquez*, PD-1272-09 (Tex. Crim. App. Feb. 3, 2010).  Velasquez did not petition the Supreme Court of the United States for *certiorari*.

---

[1]      "SH." refers to the transcript of Velasquez's state habeas corpus proceeding.

Velasquez sought habeas corpus relief in state court.  The TCCA denied his application on March 2, 2011.  He filed this federal petition on May 20, 2011.

The intermediate court of appeals summarized the relevant facts of this case:

> The decedent was found shot to death in a public park near his home on August 9, 2006.  Three suspects emerged from law enforcement's initial investigation into the murder:  Francisco Alviso, Frank Spencer, and [Velasquez] . . .  Later in its investigation, law enforcement received information that [Velasquez] had directed Alviso and Spencer to murder the decedent.  The State ultimately charged [Velasquez], Alviso, and Spencer . . . with the decedent's murder.

> In August 2007, Alviso pleaded guilty to murder as charged in the indictment.  His case was reset for punishment, and his sentencing hearing was set for a date subsequent to both Spencer's and [Velasquez]'s trials.   Days after Alviso's plea, Spencer's case proceeded to trial before a jury.  Spencer was found guilty and sentenced to 60 years in prison.  In September 2007, [Velasquez]'s case was also tried before a jury.  At [Velasquez]'s trial, Alviso testified on behalf of the State that he and Spencer had fatally shot the decedent at [Velasquez]'s direction.

> Specifically, Alviso testified that he and Spencer were members of the gang "Surrenos 13" and that [Velasquez] was the gang's leader.  Alviso testified that [Velasquez] had devised a plan to murder the decedent, a fellow gang member, because the decedent had been disloyal to [Velasquez].  According to Alviso, [Velasquez] drove Spencer, Alviso, and a third person to the decedent's house and provided Spencer with a semiautomatic and Alviso with a revolver.  Alviso testified that [Velasquez] instructed Spencer to lure the decedent out of his house and to a nearby public park, while Alviso was instructed to hide behind the bushes in the same park.  As Spencer and the decedent walked by the bushes in which Alviso was hiding, Alviso stepped out and began shooting at the decedent.  The decedent attempted to flee, but Spencer ran after him and tripped him.  As the decedent lay in the grass, Spencer shot him again, multiple times.   Spencer and Alviso then returned to [Velasquez]'s car, and they drove away.

> [Velasquez] disputed Alviso's version of the events leading up to the murder and his own involvement in the decedent's death.  [Velasquez] posed a number of cross-examination questions to demonstrate Alviso's bias and motive for testifying against him.  On cross, Alviso testified that he had pleaded guilty to the murder of the decedent and was awaiting sentencing.   Alviso further

indicated that he was testifying in an effort to cooperate with the State and in hopes of receiving a lighter sentence, possibly probation.  In further questioning Alviso about his plea of guilty, defense counsel asked Alviso, "Do you recall . . . the last offer that was made to you [by the State] before you took the P.S.I.?"  The State objected, and the trial court sustained the objection. [Velasquez] continued to cross examine Alviso.

*Velasquez v. State*, slip op. at 1-3.

## II.  The Applicable Legal Standards

### A.    The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under the AEDPA federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).  For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]."  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  Under the "contrary to" clause, this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd,* 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The sole inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The state court's factual

determinations are presumed correct unless rebutted by "clear and convincing evidence."  28

U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert.*

*denied*, 522 U.S. 1119 (1998).

      B.    <u>The Standard for Summary Judgment in Habeas Corpus Cases</u>

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to

summary judgment, applies with equal force in the context of habeas corpus cases."  *Clark v.*

*Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000).  In ordinary civil cases

a district court considering a motion for summary judgment is required to construe the facts in

the case in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby*, 477

U.S. 242, 255 (1986).  Where, however, a state prisoner's factual allegations have been resolved

against him by express or implicit findings of the state courts, and the prisoner fails to

demonstrate by clear and convincing evidence that the presumption of correctness established by

28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved

in the petitioner's favor.  *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*,

449 U.S. 539, 547 (1981).  In reviewing factual determinations of the Texas state courts, this

court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

III.    <u>Analysis</u>

Velasquez's petition raises seven claims for relief, including three subclaims of

ineffective assistance of counsel:  1) The trial court violated his Sixth Amendment right to

confront witnesses against him by limiting his cross examination of Alviso; 2) there was a

variance between the indictment and the evidence presented at trial; 3) the trial court failed to

hold a hearing outside the presence of the jury to determine whether witnesses were qualified to

testify as experts; 4) the prosecutor impermissibly vouched for the credibility of a witness; 5)

trial counsel was ineffective for failing to object to limitations on cross-examination, expert testimony by unqualified witnesses, and an improper jury charge.

    A.    <u>Procedural Default</u>

Thaler argues that Velasquez's first four claims for relief are all procedurally defaulted. The procedural default doctrine may bar federal review of a claim. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The Supreme Court has noted that

> [i]n all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").

    1.    <u>Cross Examination</u>

In his first claim for relief, Velasquez contends that the trial court denied him his Sixth Amendment right to confront witnesses against him when it sustained a prosecution objection to a question on cross examination. After cross examining Alviso on the substance of his testimony against Velasquez, *see* 3 Tr. at 158-91,[2] defense counsel began questioning Alviso

---

[2]    "Tr." refers to the transcript of Velasquez's trial.

about any inducements he had to testify against Velasquez.  Counsel got Alviso to acknowledge that he faced a sentencing range of probation to life imprisonment, and that he hoped for probation.  *Id.* at 191-93.        Counsel then asked Alviso about the last offer he received from the prosecution before pleading guilty.  The prosecution objected to the question, and the court sustained the objection.  *Id.* at 193.  On direct appeal, Velasquez argued that this violated his Sixth Amendment right to confront Alviso.  The Court of Appeals held that the claim was waived because Velasquez failed to make an offer of proof showing what Alviso would have testified, and because Velasquez failed to make a contemporaneous objection.  *Velasquez* at 3-6. The state habeas court declined to address the claim because it was raised and rejected on direct appeal.  SH at 95.

To preserve a claim for federal review, a defendant must make a specific and timely objection at the time of the allegedly objectionable conduct.  *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999) (Texas applies its contemporaneous objection rule 'strictly and regularly' and . . . it is an 'independent and adequate state-law procedural ground sufficient to bar federal court habeas review of federal claims'") (quoting *Amos v. Scott*, 61 F.3d 333, 345 (5th Cir. 1995)), *cert. denied*, 528 U.S. 1145 (2000).  Failure to object constitutes a procedural default, which bars federal habeas review unless the petitioner shows cause for the default, and actual prejudice flowing from the alleged constitutional violation, or a miscarriage of justice.  *Sykes*, 433 U.S. at 87, 80.  "Cause" for a procedural default requires a showing that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule, or a showing of a prior determination of ineffective assistance of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Amadeo v. Zant*, 486 U.S. 214, 222 (1988).   A "miscarriage of justice" means actual innocence.  *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992). To show actual innocence,

> [T]he prisoner must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Kuhlmann v. Wilson*, 477 U.S. 436, 455 n.17 (1986).  More succinctly, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the evidence now presented.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Velasquez makes no showing of cause for his procedural default, nor does he demonstrate that he is actually innocent of the crime.  Therefore, this claim is procedurally defaulted, and this Court cannot grant relief.

### 2.   Variance, Expert Witnesses, and Prosecutorial Vouching

In his second claim, Velasquez contends that the indictment charged him as the principal actor in the murder, but the trial evidence showed only that he was guilty under the law of parties.  He argues that this alleged variance between the indictment and the trial evidence denied him his Fourteenth Amendment right to due process because the indictment did not give him fair notice of the crime with which he was charged.

In his third claim for relief, Velasquez argues that the trial court erred by failing to hold a hearing outside the presence of the jury to determine whether expert witnesses were qualified to offer  opinion testimony.  Velasquez's fourth claim asserts that the prosecutor improperly vouched for the credibility of a witness.

Velasquez raised these claims in his state habeas application.  The state habeas court found the claims defaulted because Velasquez "failed to raise this 'record claim' on direct appeal."  SH at 95.

The Fifth Circuit has recognized that Texas regards such claims as defaulted if raised for the first time in a habeas corpus proceeding. This Texas rule is an independent and adequate state ground for denying relief. *Scheanette v. Quarterman*, 482 F.3d 815, 827 (5th Cir. 2007). Once again, Velasquez makes no showing of cause for his default. Therefore, relief is unavailable on these three claims.

B.       Ineffective Assistance of Counsel

In his final three claims, Velasquez contends that he received ineffective assistance of counsel when his attorney failed to object to:  1) the trial court's limitation on his cross examination of Alviso; 2) allegedly inadmissible expert testimony; and 3) the jury charge.

To prevail on a claim for ineffective assistance of counsel, Petitioner

> must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to prevail on the first prong of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 687-88.   Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances.  *Id.* at 688. Review of counsel's performance is deferential.  *Id.* at 689.

In reviewing these claims on state habeas, the trial court found that counsel was not deficient.  The TCCA adopted these findings and denied relief.  SH at 96. In order to prevail on these claims in his federal habeas corpus petition, Velasquez must show not only that he received constitutionally ineffective assistance of counsel, but also that the state habeas court's findings to the contrary were unreasonable.

"Establishing that a state court's application of *Strickland* was unreasonable under §
2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both 'highly
deferential,' *id.,* at 689 [104 S.Ct. 2052]; *Lindh v. Murphy,* 521 U.S. 320, 333, n. 7, 117 S.Ct.
2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so,
*Knowles [v. Mirzayance],* 556 U.S., at ___, 129 S.Ct. [1411], at 1420. The *Strickland* standard is
a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct.,
at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness
under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question
is not whether counsel's actions were reasonable. The question is whether there is any reasonable
argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, ___ U.S. —
, 131, S.Ct. 733, 740 (2011).

### 1.    Cross Examination

Counsel established that Alviso pled guilty to the same murder for which Velasquez was
on trial, that he was not yet sentenced, and that he hoped for leniency.  Velasquez does not point
to any evidence that Alviso had a specific sentencing offer from the State.  In the absence of such
evidence, and in light of the fact that counsel established Alviso's motive to testify favorably to
the State's case, it is not reasonably likely that an objection from counsel would have led either
to a different trial outcome or to reversal of his conviction on appeal.  Velasquez therefore fails,
at a minimum, to establish *Strickland* prejudice.

### 2.    Expert Witnesses

The State presented testimony by two expert witnesses, Mohammad Al-Mohamed, and
D.C. Lambright, on ballistics and blood spatter, respectively.  Velasquez contends that these
witnesses were not qualified to testify as experts in these fields and that counsel erred by failing
to challenge them.

Velasquez points to the witnesses' educational credentials in fields other than the subjects of their testimony.  Formal education in a field, however, is not a requirement for expert testimony.  Rather, as Federal Rule of Evidence 702 states, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education . . . ."  Rule 702 of the Texas Rules of Evidence provides the same standards.

Al-Mohamed testified that he worked for more than 10 years as a firearms examiner in the firearms section of the Houston Police Department crime lab.  4 Tr. at 28-29.  He received on the job training from a senior firearms examiner and has attended professional courses.  *Id.* at 30-32.

Lambright testified that he is a crime scene investigator with the Houston Police Department homicide division.  He had 23 years experience as a police officer, and received specific training in blood spatter evidence during his time as a crime scene investigator.  3 Tr. at 31-33.

Both witnesses thus testified that they were qualified by knowledge, experience, and training to testify as experts.  Velasquez points to nothing contradicting this conclusion.  Any objection would therefore likely have been futile.  Counsel was not deficient for failing to raise a futile objection.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

3.    Jury Charge

Velasquez appears to raise two objections to the jury charge.  First, he complains that the jury charge instructed the jury that it could convict him under the law of parties when the indictment only named him as a principal.  Velasquez's second related claim is somewhat unclear.  It appears that he complains that the portion of the charge on accomplice testimony suggested that the jury was required to believe that testimony.  Respondent characterizes it as a

complaint that the jury charge did not require the jury to find guilt beyond a reasonable doubt. Velasquez contends, based on these alleged defects, that counsel was deficient for not objecting.

a.     Variance

"A material variance occurs when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense."  *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir.), *cert. denied*, 552 U.S. 923 (2007).  Texas law, however, is clear that the prosecution may obtain a conviction for a substantive offense under the law of parties even if the law of parties is not pled in the indictment.  *See*, *e.g.*, *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002).  Moreover, the Fifth Circuit has held that "one who has been indicted as a principal may, on proper instructions, be convicted on evidence showing only that he aided and abetted the commission of the offense."  *United States v. Robles-Pantoja*, 887 F.2d 1250, 1255 (5th Cir. 1989).  Thus, Velasquez's conviction under the law of parties did not violate either Texas law or the United States Constitution.  Therefore, any objections would have been futile, and counsel was not deficient for failing to object on these grounds.

b.     Reasonable Doubt/Accomplice Testimony

The record makes clear that the jury charge informed the jury that it must find guilt beyond a reasonable doubt, *see* CR at 58-59.[3]  With regard to the burden of proof, the court concluded:  "Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'" *Id.* at 59.

Regarding the accomplice testimony, the court stated:  "You are instructed that a conviction cannot be had upon the testimony of an accomplice unless the jury first believes that

---

[3]        "CR" refers to the Clerk's Record.

the accomplice's testimony is true and that it shows the defendant is guilty . . . ." *Id.* at 60.  The court also informed the jury that it could not convict Velasquez solely on the basis of accomplice testimony, but must also find and believe corroborating evidence.  *Id.* at 60-61.

In sum, Velasquez fails to identify any error in the jury charge.  Because any objection would have been without merit, counsel was not ineffective for failing to object.

IV.    Conclusion

For the foregoing reasons, Velasquez fails to raise a viable claim for habeas relief.  His claims must be dismissed with prejudice for the reasons stated in this opinion.

V.    Certificate of Appealability

Velasquez has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny COA *sua sponte*.  The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request.  *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").  "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone."  *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998).  A petitioner "makes a substantial showing when he demonstrates that his

application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further."  *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).  The Supreme Court has stated that:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253© is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.   The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds.   We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  However, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)."  *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court has carefully considered each of Velasquez's claims.  The Court finds that each of the claims is foreclosed by clear, binding precedent.  This Court concludes that under such precedents, Velasquez has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This Court concludes that Velasquez is not entitled to a certificate of appealability on his claims.

VI.   Order

For the foregoing reasons, it is ORDERED as follows:

A.   Respondent Rick Thaler's Motion for Summary Judgment (Doc. # 12) is GRANTED;

B.      Petitioner Teobaldo Figueroa Velasquez's Petition for Writ of Habeas Corpus (Doc. # 1) is in all respects DENIED; and

C.      No certificate of appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Memorandum and Order.

SIGNED at Houston, Texas this 28th day of June, 2012.

_____

Kenneth M. Hoyt
United States District Judge